# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:22-cv-00149-MR

| | |
|---|---|
| **DASHA CLARK NORMAN,** | ) |
| Plaintiff, | ) |
| vs. | ) **MEMORANDUM OF DECISION AND ORDER** |
| **WAYNE BROWN, et al.,** | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court on Defendants Hope Hollingsworth and Shannon Case's Motion for Summary Judgment [Doc. 31]. Also pending is the Defendants' Motion to Strike Plaintiff's Surreply [Doc. 36].

## I. BACKGROUND

The incarcerated Plaintiff Dasha Clark Norman, proceeding pro se, is presently incarcerated in the North Carolina Department of Adult Corrections.[1] The Plaintiff filed this action pursuant to 42 U.S.C. § 1983 addressing incidents that allegedly occurred while he was incarcerated at the Transylvania County Detention Center. [Doc. 1: Complaint; Doc. 10: Am. Compl.]. The Plaintiff's unverified Amended Complaint passed initial review

---

[1] The Plaintiff is presently incarcerated at the Mountain View Correctional Institution.

against Defendants Case and Hollingsworth for failing to protect him from being attacked by another inmate. [Doc. 11: Order on Initial Review]. The Plaintiff seeks $60,000 in punitive damages from each Defendant. [Doc. 10: Am. Compl. at 5].

Defendants Hollingsworth and Case filed the instant Motion for Summary Judgment. [Doc. 30: MSJ]. Thereafter, the Court entered an Order in accordance with <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), advising the Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 32: <u>Roseboro</u> Order]. The Plaintiff filed a Response and supporting exhibits [Doc. 33: MSJ Response],[2] and the Defendants filed a Reply [Doc. 34: Reply]. The Plaintiff filed an unverified Surreply.[3] [Doc. 35: Surreply]. The Defendants have moved to strike the Surreply [Doc. 36:

---

[2] The Response contains only a signature and seal of a notary. [Doc. 33: MSJ Response at 7]. This is, at most, a Notarial Certificate which indicates only that the Plaintiff signed the Response. <u>See</u> generally N.C. Gen. Stat. § 10B-41 (describing notarial certificate of acknowledgement). Such certification is not the equivalent of a verification or affidavit, and it is not a certification that the Plaintiff swore to the truth of its contents. <u>See</u> <u>Pratt v. Allbritton</u>, No. 4:16-cv-00198-BR, 2018 WL 4610151, at *7 (E.D.N.C. Aug. 8, 2018), *report and recommendation adopted*, No. 4:16-cv-198-BR, 2018 WL 4604522 (E.D.N.C. Sept. 21, 2018), *aff'd sub nom.* <u>Pratt v. Albritton</u>, 764 F. App'x 343 (4th Cir. 2019). Accordingly, any forecast of evidence provided in the Response will not be considered in the summary judgment analysis.

[3] Titled "Plaintiff's Answer to Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment."

2

Motion to Strike], which the Plaintiff opposes[4] [Doc. 38: Response to Motion to Strike]. The Defendants do not intend to reply. [Doc. 39: Notice of Non Reply]. This matter is ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

---

[4] Plaintiff's Response to the Motion to Strike is titled "Plaintiff's Motion to Deny Defendants Motion to Strike Plaintiff's Sur-Reply."

3

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To that end, only evidence admissible at trial may be considered by the Court on summary judgment. Kennedy v. Joy Technologies, Inc., 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott, 550 U.S. at 380.

## III. FACTUAL BACKGROUND

The forecast of evidence, viewed in the light most favorable to the Plaintiff, shows the following.

The Plaintiff first met inmate Alex O'Shields when they were incarcerated together in 2018. [Doc. 31-3: Depo. at 2].[5] The two had a friendly interaction in 2019. [Id. at 4]. The Plaintiff next encountered Mr. O'Shields when they were both incarcerated at the TCDC in 2021. [Id. at 4].

---

[5] Exhibit 31-3 consists of excerpts from the Plaintiff's May 17, 2023 deposition.

5

The Plaintiff and O'Shields were housed together in the same housing pod of 28 inmates and had worked together on the same shift at the TCDC kitchen for six or seven months. [Id. at 5-9]. The Plaintiff and O'Shields interacted "quite a bit" outside of the kitchen; the Plaintiff thought that they were "pretty good friends." [Id. at 51].

Supervisor Hollingsworth was the chef and kitchen supervisor at TCDC. [Doc. 31-5: Hollingsworth Decl. at ¶ 2]. Her duties included supervising inmates in the kitchen. [Id. at ¶ 3; Doc. 31-3: Depo. at 8]. Sergeant Case worked "over the whole jail." [Doc. 31-3: Depo. at 9].

On November 21, 2021, Sergeant Case was not working; Supervisor Hollingsworth was working in the kitchen along with the Plaintiff and O'Shields. [Doc. 31-5: Hollingsworth Decl. at ¶ 4; Doc. 31-3: Depo. at 29]. While Hollingsworth was standing at the stove, O'Shields suddenly came up to the Plaintiff and said he was "sick of [Plaintiff's] s-h-i-t" and that he was going to "F [Plaintiff] up." [Doc. 31-3: Depo. at 32; see Doc. 31-5: Hollingsworth Decl. at ¶ 7]. The Plaintiff told O'Shields that he was not going to fight and did not raise a hand or "do anything." [Doc. 31-3: Depo. at 32, 37]. O'Shields continued a loud conversation with the Plaintiff for about two minutes. [Id. at 32, 36]. O'Shields' actions "were telling [the Plaintiff] that [O'Shields] was on the verge of assaulting [him]." [Id. at 19]. Hollingsworth

6

was standing at the stove about five feet away from O'Shields during the conversation when he threatened the Plaintiff; Hollingsworth was looking, following along with the incident, and "heard the whole thing." [Id. at 32-33].[6] Although Hollingsworth could hear the Plaintiff and O'Shields talking, "their volume and tone did not imply a problem," and she did not intervene at that time. [Doc. 31-5: Hollingsworth Decl. at ¶ 6; Doc. 31-3: Depo. at 33].

O'Shields stopped talking to the Plaintiff and walked away. [Doc. 31-3: Depo. at 34-36]. Approximately one minute later, O'Shields walked back up to the Plaintiff and started punching him without saying anything. [Id. at 35-37]. Hollingsworth heard a loud thump; she looked up and saw the Plaintiff falling to the ground. [Doc. 31-5: Hollingsworth Decl. at ¶ 7]. Hollingsworth ran around the table and could see O'Shields standing over the Plaintiff, punching him. [Id. at ¶ 8]. Hollingsworth yelled for O'Shields to stop, pushed him back, and called for help. [Id. at ¶¶ 9, 10]. O'Shields was escorted from the kitchen. [Id. at ¶ 13]. A nurse checked the Plaintiff for injuries; he was sent to the hospital for treatment and returned to TCDC the same day. [Id. at ¶ 14; Doc. 31-3: Depo. at 40-41].

---

[6] The Defendants have filed several still images from surveillance video footage in support of the Motion for Summary Judgment [see Doc. 31-3: MSJ Ex at 59-68], but the video footage itself is not before the Court.

Prior to November 21, 2021, no assaults occurred between the Plaintiff and O'Shields. [Doc. 31-3: Depo. at 11; Doc. 31-5 Hollingsworth Decl. at ¶ 6]. The Plaintiff had mentioned to Hollingsworth several times that "there were some issues there," in that it seemed as though O'Shields was trying to get the Plaintiff into trouble, but this "wasn't really taken very seriously." [Doc. 31-3: Depo. at 12]. The Plaintiff "kind of held off a little" because he did not want to "complicate matters" with his kitchen job. [Id.]. Before the incident, the Plaintiff never asked Hollingsworth or Case to keep him and O'Shields separated, never mentioned any issues to Case, and never filed any written grievances complaining about O'Shields. [Id. at 11-12, 15].

On November 29, the Plaintiff became upset that Sergeant Case "came in there and did that,"[7] and other officers' efforts to "cover up the fact...." [Id. at 28]. The Plaintiff threw a food tray so that a lieutenant would come talk to him, and to establish the time of the incident on the video footage. [Id. at 28]. The Plaintiff was placed on lockdown for having thrown

---

[7] The record is unclear as to what the Plaintiff believed Defendant Case did. Construing the record in the light most favorable to the Plaintiff, he believes that Case said something to O'Shields. The Plaintiff "let him [the lieutenant] know that Shannon Case came in there and told Alex O'Shields and Ramey what she did...."); [Doc 31-3 at 28, 45-46]. Based on the Plaintiff's subsequent grievance, he believed that Defendant Case told other inmates (possibly including O'Shields) that he "took charges," presumably against O'Shields. [Doc 31-4 at 4]. The record, however, is completely devoid of any admissible evidence to support such contention and belief.

the tray. [Id. at 28]. The Plaintiff was transferred to another facility on December 6, 2021. [Id. at 40].

The TCDC has a grievance policy of which inmates are informed via an inmate handbook. [Doc. 31-6: Queen[8] Decl. 4]. The grievance policy provides that "[a]ll grievances must be filed within two (2) days after the problem has occurred." [Doc. 31-7: MSJ Ex at 2-3]. Administration staff attempts to resolve the grievance and, if unsuccessful, an inmate may have his grievance forwarded to the detention administration for formal resolution. [Id.]. A written response is due within five business days and, if the inmate is dissatisfied with that response, he may file an appeal within two days. [Id.].

On November 21, 2021, the Plaintiff wrote a Medical request stating:

> I just wanted to report that im dizzy light headed, and where i was stabbed in the head before coming to jail has started have a very painful sensation, due to the assault inflicted onto me by another inmate in the kitchen.

[Doc. 31-4: MSJ Ex at 2] (errors uncorrected). On November 22, a detention nurse responded that the Plaintiff was "[s]een at AM medpass 11/22." [Id.]. The Medical request was closed that same day. [Id.].

On November 21, 2021, the Plaintiff also filed an Inquiry addressing the kitchen incident, stating:

---

[8] Jeremy L. Queen is a TCDC captain who supervises inmates and employees at TCDC. [Doc. 31-6: Queen Decl. at ¶ 2]. He is not a defendant in this case.

9

> I just want to state that i have always acted the same exact way in the kitchen with all the inmates. Never have i been threatening or violent. The only thing thet has ever been questiinable with Mr oshields and i is his insecurities with his girl friend and i. I feel that his actions are a result of him attempting to accomplish a victory to brag to his girl friend about. I was not doing anything except my job when i came out of the freezer he came up to me and tried to make a sceen to ms hope. All i did is ask why he was trying to get ms hope to tink we had problems. **I didn't even take it very serious** i never took a fighting stance or fought back or anything i would never do something like that in the kitchen or in this jail, the prosicutor would have a feild day with me. I i did everything i was supposed to do as far as i have ever heard. Im not guilty of any wrong doing what soever. Everyone knows im not going to fight anymore. He knew that and **chose to do that out of the blue**.

[Doc. 31-3: Dep. Ex at 53] (errors uncorrected, emphasis added). Lieutenant McCall responded on November 22, 2021 that the matter would be assigned to a hearing board. [Id.]. The Plaintiff closed the Inquiry on November 24, 2021. [Id.].

The Plaintiff filed a Grievance on November 22, 2021, stating:

> LT.
> I have to tell you that **your officers came back to the pod last night and told several inmates that I took charges out on an inmate**. I never spoke to a magistrate or asked to so I have not took papers on any one. Then hogsed wrote me up for 30 days for some fake hearsay stuff that can not possibly be taken serious, so just because an individual doesn't like me it makes it ok for him to start swinging on someone that didn't even so much as brace themselves for a punch. So I feel that since I got off the 30 day lock down hogseds crew game me he is going to retaliate against me threw this set of charges. The video speaks for it self, at no time will there ever be revelation of me teasing or harassing him, so how can I be written up for it at all. **He approached me**

> **out of the blue** about my breathing or sniffing him too hard or something crazy like that **I didn't even take it seriously**. And then hogsed threatened me because I had my lawyer ask if I could get a phone call, which apearently really upset him. This is all very odd, and seems like a group of stalking. Thank you for your time and consideration. I know its not you there is rule breaking under you.

[Doc. 31-4: MSJ Ex at 3] (errors uncorrected, emphasis added). Lieutenant McCall responded on November 23 that the Plaintiff would be "locked down" for the incident and that he needed to explain himself to the hearing board. [Id.]. The Plaintiff closed the Grievance on December 4. [Id.].

On November 24, 2021, the Plaintiff filed a grievance stating:

> I just want to report that I disagree with being locked down for 10 days. I was assaulted lost my job and put in another situation due to **sgt. case comming into to pod and telling inmates i was taking charges out**. Then when i asked to speak to a sargent or any other of rank i was told everyone was too busy. However **sgt case wasnt to busy to make a special trip down here to instigate issues**. Then when i said something on the call box officer morgan lied to me abut sgt case coming down here, so i was frustrated especially after having a head injury then being disrespected and lied on by the staff, i wanted to speak to someone above them who didnt know they were behaving this way. After officer morgan told me that noone was gonna talk to me and it didnt matter what i did. I came out of my cell got my tray and specifically said to Blankenship "before i throw this try is it going to hurt anyone over there" he said no. I said is it going to hurt me he said no. is said ok and threw it in a way to cause no harm damage or injury and went directly to my cell. Nothing was broke meal time never stopped and that was all. WHY 10 days???

11

[Id. at 4] (errors uncorrected, emphasis added). Lieutenant McCall responded on November 24 that he agrees with the lockdown. [Id.]. The Plaintiff closed the grievance on December 4, 2021. [Id.].

The Plaintiff wrote a handwritten "Grievance" to McCall in July 2022, after the Plaintiff had been transferred to NCDAC. [Doc. 31-3: Depo. at 21; Doc. 31-3: Depo. Ex at 54]. In it, he states *inter alia* that: "Hollingsworth … simply watched [O'Shields] make threatening statements, and aggressive acts;" and after the Plaintiff notified "staff" that he was being accused of snitching, Sergeant Case came to the Plaintiff's pod to tell inmates O'Shields and Ramey that the Plaintiff had taken out a warrant on O'Shields. [Doc. 31-3: Depo. Ex at 54-57] (errors uncorrected).

In an undated handwritten "Grievance" addressed to "Mr. Wayn Brown," the Plaintiff complains about the "lack of interest" that Brown gave the Plaintiff's request for a warrant on a woman who had allegedly stabbed the Plaintiff at his home in 2020. [See Doc. 7-1].

IV. **DISCUSSION**

   A. **Exhaustion**

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust his administrative remedies before filing a § 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part, that "[n]o action shall be

brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. The PLRA's exhaustion requirement applies to all inmate suits about prison life. Porter v. Nussle, 534 U.S. 516, 532 (2002). There is "no question that exhaustion is mandatory under PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The PLRA requires "proper" exhaustion, which means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). Because the exhaustion of administrative remedies is an affirmative defense, defendants have the burden of pleading and proving the lack of exhaustion. Jones, 549 U.S. at 216. It is well-settled that a prisoner may not exhaust his administrative remedies during the pendency of a § 1983 action; rather, he must fully exhaust all steps of the administrative remedy process before filing his lawsuit. See Porter, 534 U.S. at 516; Germain v. Shearin, 653 F. App'x 231, 234 (4th Cir. 2016); French v. Warden, 442 F. App'x 845, 846 (4th Cir. 2011).

The Amended Complaint alleges two instances of alleged failure to protect: Hollingsworth's failure to prevent O'Shields from attacking the Plaintiff [see Doc. 11 at 5, 14-15] and Case's attempt to incite violence against the Plaintiff by telling other inmates that he was "snitching" on O'Shields [id. at 5, 12-13].

As to the Plaintiff's first claim, the forecast of evidence demonstrates that he filed an Inquiry the same day as the incident, claiming that the Plaintiff injured him without provocation, and he filed a Grievance a day later. However, neither the Inquiry nor the Grievance fairly notified TCDC officials that the Plaintiff was claiming that Defendant Hollingsworth failed to protect him from the kitchen attack by O'Shields. The Plaintiff has offered no evidence to rebut the Defendants' showing that the Plaintiff failed to exhaust his administrative remedies on this claim before filing the lawsuit. Without such evidence, the Plaintiff has not presented a sufficient forecast of evidence to survive the Defendants' Motion for Summary Judgment. Anderson, 477 U.S. at 248 (the plaintiff can survive a motion for summary judgment by providing sufficient evidence so that "a reasonable jury could return a verdict for [the plaintiff]."). Accordingly, the Court concludes that the Plaintiff's claim against Hollingsworth for failure to protect is unexhausted, and the Defendants' Motion for Summary Judgment will be granted on this

ground.[9]

**Failure to Protect**

A pretrial detainee's failure to protect claim constitutes a due process claim under the Fourteenth Amendment.[10] Farmer v. Brennan, 511 U.S. 825 (1994); Brown v. Harris, 240 F.3d 383, 388-90 (4th Cir. 2001) (applying Farmer to a pretrial detainee's failure to protect and medical claims). The deliberate indifference standard applies to cases alleging failure to safeguard an inmate's health and safety, including failure to protect inmates from attack. See Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (quoting Young v. City of Mt. Ranier, 238 F.3d 567, 574 (4th Cir. 2001) (internal quotation and citation omitted)). Courts "have traditionally looked to Eighth Amendment precedents in considering a Fourteenth Amendment claim of deliberate indifference..." Mays v. Sprinkle, 992 F.3d 295, 300 (4th Cir. 2021). To state a claim against a prison official for failure to protect, an inmate must show: (1) "serious or significant physical or emotional injury,"

---

[9] The Defendants do not to appear to argue that the claim against Defendant Case is unexhausted.

[10] Because a dismissal based on the failure to exhaust administrative remedies would otherwise be without prejudice, the Court will also address the other grounds for summary judgment asserted by Defendants. See Dillard v. Anderson, No. 2:13-cv-31-FDW, 2010 WL 9553022, at *2 n.2 (W.D.N.C. Sept. 6, 2010) (Whitney, C.J.) ("A dismissal for failure to exhaust administrative remedies is without prejudice.").
.

and (2) that prison officials exhibited deliberate indifference to inmate health or safety." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks omitted); Danser v. Stansberry, 772 F.3d 340, 346-47 (4th Cir. 2014) (objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury").

To be deliberately indifferent, a prison official must "know of and disregard an objectively serious … risk of harm." Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997). "An officer is deliberately indifferent to a substantial risk of harm to a detainee when that officer 'knows of and disregards' the risk." Parrish, 372 F.3d at 302 (quoting Farmer, 511 U.S. at 837). To be liable under this standard, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Thus, deliberate indifference requires a showing that a defendant "actually knew of and disregarded a substantial risk of serious injury to the detainee…." Young, 238 F.3d at 575-76. "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999).

The Plaintiff claims that Defendant Hollingsworth failed to protect him from inmate O'Shields's attack in the kitchen. Although the Plaintiff asserts

that Hollingsworth should have realized that O'Shields was about to attack him, he has not forecast any evidence to that effect. The forecast of evidence demonstrates that the Plaintiff and O'Shields were friendly before the incident; that there was no history of assaults between the two; that the Plaintiff never requested that they be separated before the incident; that the Plaintiff and O'Shields had lived and worked together without any incidents for six or seven months; and that the Plaintiff had only mentioned vague concerns about O'Shields trying to get him into trouble before the attack. Moreover, the Plaintiff stated in his grievance that even he did not take O'Shields' threat seriously. [Doc. 31-3 at 53; Doc. 31-4 at 3]. The Defendants have forecast evidence, which the Plaintiff has failed to rebut, that Hollingsworth did not believe that the tone and volume of the conversation on the day at issue presented any cause for concern until O'Shields began hitting the Plaintiff. The Plaintiff has failed to forecast any evidence that Defendant Hollingsworth knew that O'Shields presented a substantial risk of serious injury to the Plaintiff before the physical attack and deliberately failed to prevent the same. Even if the forecast of evidence were deemed sufficient to show a genuine dispute as to Hollingsworth's negligence, this would be insufficient to support a deliberate indifference claim. See Grayson, 195 F.3d

at 695. Accordingly, the Defendants are entitled to summary judgment on the claim against Defendant Hollingsworth.

The Plaintiff also has not forecast any evidence that Defendant Case purposefully attempted to instigate other inmates to attack him by telling them that he was pressing charges against O'Shields. [See Doc. 31-3: Depo. at 28 (vaguely alluding to "what [Case] did")]. Nor is there any forecast of evidence that the Plaintiff suffered any serious or significant physical or emotional injury as a result of Defendant Case's alleged actions. Therefore, the Defendants are entitled to summary judgment on the claim against Defendant Case as well.

### B.  Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (*en banc*). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government

officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Here, because Plaintiff has not forecasted evidence that the Defendants violated any constitutional right, the Defendants are also entitled qualified immunity. The Defendants' Motion for Summary Judgment is, therefore, granted on this ground as well.

### C. Motion to Strike

The Defendants have moved to strike the Plaintiff's Surreply to the Motion for Summary Judgment because such is not authorized by the Court's local rules. [Doc. 36: Motion to Strike; Doc. 37: Motion to Strike Memo.]. The Plaintiff responds that the Court should grant him leave to file the Surreply because it supplies "facts of proof contrary to defendant councils entire list of supporting statements for summary judgment…." [Doc. 38: Response to Motion to Strike at 1] (errors uncorrected).

The Motion to Strike will be granted because the unauthorized Surreply violates the Court's Local Rules. See LCvR 7.1(e). Moreover, even if the Court were to consider the unverified Surreply, such would have no effect on the outcome of this case.

## IV. CONCLUSION

For the reasons stated herein, the Court grants Defendants' Motion for Summary Judgment, and this action is dismissed with prejudice.

### ORDER

**IT IS, THEREFORE, ORDERED** that Defendants' Motion for Summary Judgment [Doc. 30] is **GRANTED,** and this action is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Defendants' Motion to Strike Plaintiff's Surreply [Doc. 36] is **GRANTED**, and the Plaintiff's Surreply [Doc. 35] is **STRICKEN.**

The Clerk is respectfully directed to terminate this action.

**IT IS SO ORDERED.**

Signed: August 29, 2023

Martin Reidinger
Chief United States District Judge